IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Larry Carden, | ) | C.A. No.:  6:05-2053-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPINION AND ORDER** |
| vs. | ) | |
| | ) | |
| Aetna Life Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court by way of the parties' cross-motions for judgment. Plaintiff asserts entitlement to certain benefits pursuant to E.R.I.S.A. 29 U.S.C. § 1132(a)(1)(B). The parties entered into a Joint Stipulation agreeing to certain relevant facts. The parties also agreed that the court may dispose of the matter based upon cross-motions for judgment.[1]

## **PROCEDURAL OVERVIEW**

By way of the Joint Stipulation, the parties agreed that the Plaintiffs seek declaratory relief pursuant to E.R.I.S.A. 29 U.S.C. § 1132(a)(1)(B). The parties agreed that the Plaintiffs have properly exhausted administrative remedies available under the plan as to the issue at hand. Further, the parties agreed upon the applicability of the plan documents attached to the Joint Stipulation and provided the court the administrative record.

Further, the parties agreed that the modified abuse of discretion standard applies to the case and that the following issue is before the court:

> Whether the Defendant, under the specific language of the plan documents . . . is entitled to offset worker's compensation benefits recovered by Mr. Carden against the monthly

---

[1] The Fourth Circuit has recognized that the parties may agree to dispose of E.R.I.S.A. governed benefit claim cases by way of cross-motions for judgment while doing away with the summary judgment standard. (See *Bynum v. CIGNA Healthcare of NC, Inc.*, 287 F.3d 305, fn14 (4th Cir. 2002).)

1

disability benefits being paid by Defendant to Mr. Carden when the physical basis for the disability benefits being paid by Defendant is different than the physical basis which gave rise to the worker's compensation award.  The parties hereby stipulate that the basis for Mr. Carden's disability claim with Defendant and the physical basis for his Workers' Compensation claim are different.

## **RELEVANT TERMS OF THE PLAN**

The long-term disability plan document provides in pertinent part:

For the purpose of section 503 of Title 1 of the Employee Retirement Income Security Act of 1974, as amended (ERISA), Aetna is a fiduciary with complete authority to review all denied claims for benefits under this policy.  In exercising such fiduciary responsibility, Aetna shall have discretionary authority to:

Determine whether and to what extent employees and fiduciaries are entitled to benefits; and

Construe any disputed or doubtful terms of the policy.

●●●

**Other Income Benefits–This section outlines income benefits which you may receive from other sources while disabled and which will be considered as an offset to payments you receive from other sources while disabled and which will be considered as an offset to payments you receive under this plan.**

> They are: Temporary or permanent, partial or total disability benefits under any state or federal workers' compensation law or any like law, which are meant to compensate the worker for any one or more of the following: loss of past or future wages; impaired earning capacity; lessened ability to compete in the open labor market; **any degree of permanent impairment**; and any degree of loss of bodily function or capacity. . . (emphasis added)

●●●

**How Aetna Determines Other Income Benefits**

**Lump Sum Payments from Workers' Compensation:**

> That part of the lump sum payment that is for disability will be counted, even if it is not specifically apportioned or identified as such.  This will be done if it is or is not the result of a compromise, settlement, award or judgment.  If there is no proof acceptable to Aetna as to what that part is, 50% will be deemed to be for disability[2]. . .

●●●

---

[2] Plaintiff does not assert that only 50% of the workers' compensation settlement should be deemed for disability. He contends that no part of the settlement should be offset.

2

**Contract Not a Substitute for Workers' Compensation Insurance**

> The group contract is not in lieu of and does not affect workers' compensation benefits. However, any workers' compensation benefits are considered other income benefits.

## FACTS

The facts in the case are undisputed. Carden was employed by Duke Energy and was a participant in the long term disability benefits plan at issue in the case at bar. He applied for and was awarded benefits under the plan in 1997. He developed asbestosis while employed at Duke and received a lump sum settlement of his workers' compensation claim in May of 1999.[3] The Agreement of Final Settlement and Release dated May 16, 1999 (Bates 7090115) states in pertinent part that the parties are subject to the provisions of the North Carolina Worker's Compensation Act and that, although the company contended Carden is not disabled, a lump sum payment would be made for "alleged permanent impairment". The employer also agreed to pay Carden's medical bills arising from the condition and for an annual medical examination. As noted above, the parties agree that the basis of the workers' compensation claim was different from his long-term disability claim. In 2004, Aetna learned about the workers' compensation payment and notified Carden that he had been overpaid disability benefits and that his disability payments would be withheld until the overpayment was recovered. (*See* letter dated December 7, 2004, Bates 7090106).

## SCOPE OF REVIEW

In cases in which a court reviews an ERISA plan administrator's decision to deny benefits, if the reviewing court determines that the language of the plan confers discretion on the administrator to determine eligibility or to construe terms of the plan, then a court reviews the decision to deny benefits

---

[3] Plaintiff received a lump sum settlement of $53,248.00. Of this amount, $13,312.00 was approved as an attorney's fee. (Bates 7090114). Therefore, the amount which the defendant utilized in calculating the offset was $39,936.00.

for abuse of discretion. *Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000).

The Fourth Circuit enunciated the standards applicable to the scope of review of courts in ERISA cases in *Colucci v. AGFA Corp. Severance Pay Plan*, 431 F.3d 170 (4th Cir. 2005). In *Colucci*, the Court explained:

> When a plan by its terms confers discretion on the plan's administrator to interpret its provisions and the administrator acts reasonably within the scope of that discretion, courts defer to the administrator's interpretation. . . In those circumstances, a court will not disturb an administrator's decision as long as it is reasonable. . . This is because the plan, in conferring discretion on a trustee with respect to a specific matter, deliberately yields to the trustee's judgment on that matter, as long as it is reasonable. The plan thus recognizes that on such a matter, various reasonable decisions and interpretations could be made, and it accepts, as a contractual term of the plan, the range of decisions that a trustee could reasonably make . . . Yet when the plan's terms are ambiguous in the sense that its language gives rise to at least two different but reasonable interpretations and when the plan confers discretion on the administrator to interpret the plan and resolve ambiguities, a court defers to the administrator's interpretation by reviewing it only for abuse of discretion.

*Id*., 431 F.3d at 176.

The parties agree that the abuse of discretion standard should be modified due to the conflict of interest by the Plan Administrator who is also the insurer of the plan. The Fourth Circuit has described how a "conflict of interest" impacts the court's review of a benefit claim denial. In *Bedrick v. Travelers Insurance Company*, 93 F.3d 149, 152 (4th Cir. 1995), the court held as follows:

> Travelers concedes that it has a conflict of interest, but the parties debate what the conflict means. Travelers says its conflict is merely a "factor", citing the passage from *Firestone*[4], while Plaintiffs say that it changes the standard of review, citing this court's cases . . . Our cases are interpretations of *Firestone*, and we apply *Firestone's* "factor" in this manner: "when a fiduciary exercises

---

[4] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101 (1989).

> discretion in interpreting a disputed term of the contract where one interpretation will further the financial interest of the fiduciary, we will not act as deferentially as would otherwise be appropriate. Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries. In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict.

Under this standard, "the court modifies [the] abuse of discretion standard according to a sliding scale." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 233 (4th Cir. 1997). "The more incentive for the administrator . . . to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator['s] . . . decision must be and the more substantial the evidence must be to support it." *Id.* Therefore, in light of the conflict of interest, Aetna's decision is entitled to reduced deference and the decision to offset Carden's benefits must be examined closely to determine whether Aetna's decision was objectively reasonable.

In determining whether Aetna's decision was reasonable under a modified abuse of discretion standard of review, the Court may consider the following factors: "(1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decision making process was reasoned and principled; (6) whether the decision was consistent with the procedural substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Booth v. Wal-Mart Stores, Inc. Assocs. Health and Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000).

## LEGAL ANALYSIS

### *1. Issue Stipulated by Parties and Identified by United States District Judge Floyd*

As noted hereinabove, the parties have submitted a Joint Stipulation to the Court in which they have agreed on the issue to be decided by the Court. That issue is whether Defendant "is entitled to offset workers' compensation benefits recovered by Mr. Carden against the monthly disability benefits being paid by Defendant to Mr. Carden when the physical basis for the disability benefits being paid by Defendant is different than the physical basis which gave rise to the workers' compensation award."

Plaintiff initiated his case as a co-plaintiff with several other individuals who were drawing long-term disability benefits under the same plan and who also received workers' compensation settlements. The original case, *Cook, et al v. Aetna Life Insurance Company* was assigned to United States District Judge Floyd and was assigned case number 6:045-22504-26. Judge Floyd issued an order severing the claim of Carden and indicating that "the parties have advised the court that the narrow and specific legal issue raised by the matter *sub judice* is whether the language of the subject E.R.I.S.A. governed plan document allows Defendant to claim credit for monies obtained from a Workers' Compensation claim when the basis for the Workers' Compensation claim and the long term disability claim with Defendant are different." [*Cook*, Docket Entry 16].[5]

"The plain language of an ERISA plan must be enforced in accordance with its literal and natural meaning." *Kress v. Food Employers Labor Relations Ass'n*, 391 F.3d 563, 568 (4th Cir. 2004) (internal quotation marks omitted). "The award of benefits under any ERISA plan is governed . . . by the language of the plan itself." *Lockhart v. United Mine Workers of Am. 1974 Pension Trust*, 5 F.3d 74, 78 (4th Cir. 1993) (internal quotation marks and citations omitted).

Aetna contends that the unambiguous terms of the Plan require an offset of Carden's workers'

---

[5] Plaintiff filed an Amended Complaint in the case at bar after the claim of Carden was severed. In the Amended Complaint, ¶ XII, plaintiff alleges that the workers' compensation claim was based on a "medical condition which is completely different from the medical basis for Plaintiff's drawing disability benefits from the Defendant."

compensation benefits, regardless of the fact that the physical basis for the long-term disability benefits and the physical basis for the workers' compensation claim are completely different.

Defendant cites *Elgin v. Aetna Life Ins. Co.*, No. 6:06-2095-HMH, 2007 WL 1034988, at *3-5, (D.S.C. March 30, 2007), in which United States District Judge Henry Herlong addressed similar issues in a plan containing similar language and found the administrator did not abuse its discretion in offsetting workers' compensation benefits, even though the physical basis for the two claims was different. In *Elgin*, the plaintiff was receiving long term disability benefits related to an injury to his shoulder. He received workers' compensation settlements from the shoulder injury and also for carpal tunnel syndrome. Aetna began to offset the amounts of the two workers' compensation awards from the disability payment. Elgin asserted that the offset for the settlement received for carpal tunnel syndrome was improper because this was not the same injury that formed the basis of his claim for disability benefits under the Plan. The workers' compensation settlement agreement in *Elgin* specified that the monies were compensation for "future disability benefits." The Plan defined "Other Income Benefits" as "disability, retirement, or unemployment benefits required or provided for under any law of a government. Examples are: Temporary or permanent, partial or total disability benefits under any state or federal workers' compensation law . . . which are meant to compensate the worker for any one or more of the following: . . . any degree of permanent impairment. . ." The Plan contained similar provisions as the Plan in the instant case regarding lump sum payments or settlements. Judge Herlong found that the Plan unambiguously required an offset of the workers' compensation benefits and analyzed the situation as follows:

> Elgin was awarded disability benefits under the South Carolina Workers'
> Compensation Act (the WC Act) . . . by virtue of his employment with
> Michelin. . . The WC Act defines "disability" as an "incapacity because
> of injury to earn the wages which the employee was receiving at the time

> of the injury. . ." S.C. Code Ann. § 42-1-120 (1985). Therefore, the portion of Elgin's settlement proceeds devoted to compensating Elgin for future disability benefits and paid pursuant to his WC claim based on (carpal tunnel) falls squarely within the pertinent definition of "other income benefits" set forth above. . . <u>Further, no other terms of the Plan render this definition ambiguous or limit the definition to include only benefits paid as a result of the same condition that gives rise to a payment of (long term disability) benefits under the Plan.</u> (Emphasis added).

*Id.* at *4.

Although the Workers' Compensation claim in the instant case was filed under the North Carolina Workers' Compensation Act rather than the South Carolina Workers' Compensation Act as in *Elgin*, and the settlement agreement in the case at bar refers to the employer's contention that the plaintiff was not disabled and states that the award is for "permanent impairment", the Court does not find those differences definitive.

The Plan in the case at bar, like the Plan before Judge Herlong, expressly provides that Aetna will offset "other income benefits" from the disability payments under the Plan. "Other income benefits" specifically include workers' compensation benefits. The Plan expressly requires offset for workers' compensation benefits which are intended to compensate the worker for loss of wages, earning capacity, ability to compete, "any degree of permanent impairment", and loss of "bodily function or capacity." The agreement between the plaintiff and the employer regarding the workers' compensation settlement indicates that the settlement was based on plaintiff's "permanent impairment" and is therefore a type of workers' compensation benefit which is contemplated by the Plan in requiring an offset. Additionally, lump sum payments from workers' compensation are also considered "other income benefits" which must be offset.

Therefore, the Court finds that the Plan Administrator's decision is "consistent with an exercise

of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries." *Doe v. Group Hospitalization & Medical Services*, 3 F.3d 80, 87 (4th Cir. 1993). The decision is consistent with the plain and unambiguous language of the Plan and with other provisions of the Plan.[6] The Plan contains no language exempting from the "other income" provisions workers' compensation benefits which arise from a different medical or physical condition or disability. Aetna's interpretation of the Plan is reasonable in concluding that the "other income" provision in the Plan does not limit offsets of workers' compensation benefits to disability benefits received for the *same* injury or medical condition as the one giving rise to a claim for long-term disability benefits under the Plan.

### *2. Did Plaintiff receive a lump sum payment from workers' compensation for "disability", where the Workers' Compensation Settlement Agreement designated his payment as being for "permanent impairment"?*

Plaintiff contends that the plan unambiguously does not require an offset, since only lump sum settlements for "disability" are offset, and the plaintiff's Workers' Compensation settlement agreement references plaintiff's "permanent impairment." Carden asserts that "no where in the Workers' Compensation settlement agreement is any money attributed to 'disability' nor is there any indication that Plaintiff claimed any money for 'disability'." (Document # 9, Amended Memorandum in Support of Judgment, p. 7-8). Plaintiff asserts in the alternative that the Plan is ambiguous and should be construed against the drafter.

The Court will first address the question whether the plaintiff has now either asserted a new position and issue or changed his position, where the issue framed for the Court was based on the parties' stipulated issue as follows:

---

[6] *See* provision appearing at Page 16 of Plan (Bates 7180040): "The group contract is not in lieu of and does not affect workers' compensation benefits. However, any workers' compensation benefits are considered other income benefits."

9

> Whether the Defendant, under the specific language of the plan documents . . . is entitled to offset worker's compensation benefits recovered by Mr. Carden against the monthly disability benefits being paid by Defendant to Mr. Carden when the physical basis for the disability benefits being paid by Defendant is different than the physical basis which gave rise to the worker's compensation award. The parties hereby stipulate that the basis for Mr. Carden's disability claim with Defendant and the physical basis for his Workers' Compensation claim are different.

Plaintiff contends that he has not changed his position but merely provided a more detailed argument.

It appears that the plaintiff took the position in his appeal within the Plan of the Plan Administrator's decision that, since the physical basis for the workers' compensation claim was different from that of his long-term disability claim that the offset should not apply. Plaintiff's appeal letter dated January 11, 2005 states: "My client's workers' compensation claim related to asbestos. Clearly, the Worker's Compensation and the Aetna disability claim were based on completely different problems that have no relation whatsoever to one another. Accordingly, under the terms of the Aetna insured, E.R.I.S.A. governed disability policy, Aetna would not be entitled to an offset for monies paid for a compeletely unrelated problem." (Bates 110). Plaintiff has not pointed to anywhere in the administrative record where he made the current argument that the provision regarding lump sum payments should be regarded as a separate part of the plan and that offsets do not apply in this case where the workers' compensation lump sum settlement agreement was not based on a "disability" but rather for a "permanent impairment".

On the basis of the issue stipulated in the parties' Joint Stipulation, the Order of Judge Floyd, and the record in the case, the Court questions whether this separate issue relating to the interpretation

argued by Plaintiff's counsel is properly before the Court.[7]

However, even if this argument is properly before the Court, the Court finds that it lacks merit. The Plan provides: "[t]hat part of the lump sum or periodic payment that is for disability will be counted, even if it is not specifically apportioned or identified as such." This provision is clearly not meant to alter the definition of "other income benefits". The lump sum provision simply determines how "other income benefits" will be calculated if benefits are received as part of a lump sum payment. Under the plain language of the plan, the "Other Income Benefits" section defines the types of benefits that will offset Carden's long-term disability benefits. Because his workers' compensation benefits fall into this definition, being for "permanent impairment", and were received in a lump-sum payment, the lump-sum provision clarifies that only that portion of the total payment devoted to disability benefits will offset Carden's disability benefits paid under the Plan.[8] The lump-sum provision contains no language limiting the definition of the word "disability", and the word must be given its "literal and natural meaning." *Kress*, 391 F.3d at 568 (internal quotation marks omitted).

The provision in the plan in the case at bar does not require the specific use of the term "disability" in a workers' compensation settlement agreement where the settlement was based on "permanent impairment". As noted above, the plan provides for an offset for "disability benefits under any state or federal workers' compensation law or any other like law, which are meant to compensate the worker for any one or more of the following: . . .**any degree of permanent impairment**."(emphasis added). It also provides that the part of a lump sum payment that is for disability will be counted, "even if it is not apportioned or identified as such" and regardless of whether it is "the result of a compromise,

---

[7] Defendant also contends that the plaintiff's administrative remedies were not exhausted within the Plan as to this new argument.

[8] As noted hereinabove, plaintiff does not contend that Aetna should have deemed only 50% of the workers' compensation settlement for disability. He contends that no part of the settlement should be offset.

settlement, award or judgment." The Agreement of Final Settlement and Release provides that the parties are subject to the North Carolina Workers' Compensation Act and that the payment is for "permanent impairment". Therefore, the plain meaning of the Plan requires an offset of the worker's compensation benefits in the instant case.

Moreover, North Carolina workers' compensation law supports a finding that the plaintiff's lump sum settlement was for a disability. Where an employee claims that he is entitled to workers' compensation benefits due to an occupational disease, he must first show that such injury or disease has caused "a disability under N.C.G.S. §§ 97- 29 and-54 before an award of compensation can be granted." *Hedrix v. Linn-Corriher Corp.*, 345 S.E.2d 374, 378 (N.C. 1986). In claims relating to asbestosis, the statute provides that "compensation shall be payable in accordance with the provisions of the North Carolina Workers' Compensation Act." N.C.G.S. § 97-64. "It is clear from the language of these two statutes [N.C.G.S. §§ 97-61.5(b) and 61.7] that a diagnosis of asbestosis, for the purposes of determining eligibility to receive benefits, is the equivalent of a finding of actual disability." *Roberts v. Southeastern Magnesia and Asbestos Co.*, 301 S.E.2d 742, 744-745 (N.C. 1983).[9]

Therefore, even though the employer denied that he was disabled and "denied any liability under the North Carolina Workers' Compensation Act", the benefits which the plaintiff received were paid

---

[9] Where an employee seeks benefits for asbestosis, he may choose between receiving benefits under N.C.G.S. § 97-31 or § 97-61.5, whichever is greater. *Hicks v. Leviton Mfg. Co*., 466 S.E.2d 78, 81 (N.C.Ct. App. 1996)(case involving an award for permanent damage to lungs under N.C.G.S. § 97-31(24).) N.C.G.S. § 97-31 is the schedule of losses for which worker's compensation is payable in case of loss or permanent injury to any important organ or body part regardless of proof of loss of wage-earning capacity. N.C.G.S. § 97-61.5 provides for an automatic payment of 104 weeks of benefits to workers with asbestosis and removal of the employee from the hazardous exposure and provides some compensation for the incurable nature of the disease. *Hicks*, 466 S.E.2d at 81. "An employee with a physical impairment that falls under the schedule need not establish a loss of wage-earning capacity because **disability is presumed** from the fact of the injury itself." *Knight v. Wal-Mart Stores, Inc.*, 562 S.E.2d 434, 442 (N.C. Ct. App. 2002), *aff'd*, 577 S.E.2d 620 (N.C. 2003).

pursuant to the Workers' Compensation Act, eligibility for which is presumed when the claimant has asbestosis. Plaintiff's entitlement to benefits under the North Carolina Workers' Compensation Act was conditioned on his being disabled. Carden's workers' compensation settlement falls squarely and unambiguously within the pertinent definition of "other income benefits" set forth above.

Aetna also asserts that its interpretation of the plan is reasonable based on the purpose of "other income" provisions in disability plans. It argues that disability income is designed to provide only part of the individual's previous income and that the Duke Energy Plan provides a benefit level of 66 and 2/3% of an employee's previous earnings.  It asserts that the Plan sponsor has attempted to achieve a balance between concern for the welfare of the employees, while at the same time, encouraging employees to work to rehabilitate themselves if possible.

Based on the information available to the Plan Administrator, the Court finds that its decision is reasonable. *Bynum v. CIGNA Healthcare of North Carolina, Inc.,* 287 F.3d 305, 312 (4th Cir. 2002) The Plan Administrator's decision is supported by substantial evidence and results from "a deliberate, principled reasoning process" as required in *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997).

The Court accordingly **ORDERS** that Aetna is entitled to offset Plaintiff's long-term disability benefits by the workers' compensation benefits which he received based on his asbestosis.

**IT IS SO ORDERED.**

                                                   s/ R. Bryan Harwell
                                                   R. Bryan Harwell
                                                   United States District Judge

November 2, 2007
Florence, South Carolina